Entered on Docket
October 13, 2011

*Bruce A. Markell*

Hon. Bruce A. Markell
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * * *

In re:                                                    Case No.: BK-S-05-28163-BAM
                                        )
CAROLYN MARY SCHIVO,                    )                  Chapter 7
                                        )
                 Debtor.                )
                                        )                  Date:        March 21, 2011
                                        )                  Time:        9:30 a.m.
                                        )                  Courtroom:   3

**OPINION**

*Table of Contents*

I.    Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.   *BAPCPA and the Dismissal of Twenty-Five Bankruptcy Cases.* . . . . . 2
      B.   *The April Fool's Day Press Release* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      C.   *Proceedings Related to Mr. Huntsman's Motion to Re-Open* . . . . . . . . 6
      D.   *Mr. Huntsman's Motion to Redact and Related Proceedings.* . . . . . . . 10

II.   **Analysis of Mr. Huntsman's Violations of Rule 9011.** . . . . . . . . . . . . . . . . . . 14
      A.   *The Press Release Was Obviously Fake* . . . . . . . . . . . . . . . . . . . . . . . . . 15
      B.   *The Requirements of Rule 9011.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      C.   *Mr. Huntsman's Violations of Rule 9011.* . . . . . . . . . . . . . . . . . . . . . . . . 17
           1.   *Violation of Rule 9011(b)(2).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                a.   **The Motion to Re-Open** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                b.   **The Motion to Redact** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
           2.   *Violation of Rule 9011(b)(3).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                a.   **The Motion to Re-Open** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                b.   **The Motion to Redact** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.  **Sanctions Imposed.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IV.   **Conclusion.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Appendix I – Letter to Senator Reid.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

_____

1    BRUCE A. MARKELL, Bankruptcy Judge:

2        Rule 9011[1] requires evidentiary support and a basis in law for any factual allegations

3    attorneys make in their motions.  In this case, attorney Rulon Huntsman saw a press release

4    describing a new federal law.  The press release's summary lead him to believe that he could

5    use this new law to exonerate him from sanctions this court imposed upon him over five

6    years ago.  After unsuccessfully trying to confirm the press release's and the law's

7    authenticity, Mr. Huntsman sought to set aside the earlier sanctions based solely upon the

8    law described in the press release.  He also asked the court to issue a public apology for

9    previously sanctioning him and to pay damages for the injury to his reputation that the earlier

10   sanctions may have caused.

11       The press release and the law it described, however, were bogus, and transparently so.

12   When the court asked Mr. Hunstman to justify his motion in light of this revelation, he

13   responded by improperly demanding changes to findings of fact made five years earlier

14   which had been made in connection with the sanctions then imposed.

15       The court hereby sanctions Mr. Huntsman for this conduct.

16   **I.    Facts**

17       Mr. Huntsman's current conduct can only be understood in light to the facts

18   surrounding  the earlier sanctions.  For this reason, the court starts there.

19       *A       BAPCPA and the Dismissal of Twenty-Five Bankruptcy Cases*

20       President George W. Bush signed the Bankruptcy Abuse Prevention and Consumer

21   Protection Act into law on April 20, 2005.  Bankruptcy Abuse and Consumer Protection Act

22   of 2005, Pub. L. No. 109-8, 119 Stat. 23, 23 (2005) ("BAPCPA").  BAPCPA became

23   effective on October 17, 2005, a Sunday.  Pub. L. No. 109-8, § 1501(a), 119 Stat. 23, 216

24   (2005) ("[T]his act and the amendments made by this Act shall take effect 180 days after the

25

26       [1]Unless specified otherwise, all Chapter and Section references are to the Bankruptcy
     Code, 11 U.S.C. §§ 101-1532, and all Rule references are to the Federal Rules of Bankruptcy
27   Procedure, Rules 1001-9037.  All Civil Rule references are to the Federal Rules of Civil
     Procedure, Rules 1-86.  All Evidence Rule references are to the Federal Rules of Evidence,
28   Rules 101-1103.

date of enactment of this Act."). Thus, cases filed after 11:59 p.m. on October 16, 2005 had to comply with the requirements imposed by BAPCPA.

At that time, many bankruptcy attorneys faced an unprecedented surge in clients wanting to file bankruptcy under the "old law." Mr. Huntsman was one such attorney, and he attempted to file over thirty petitions around the time BAPCPA became effective. A number of Mr. Huntsman's petitions, however, were not filed before BAPCPA's midnight deadline. These petitions were thus subject to BAPCPA. They did not, however, comply with the new law: They lacked evidence of prepetition credit counseling, a requirement newly imposed by BAPCPA. *See* 11 U.S.C. § 109(h) (added by Pub. L. No. 109-8, § 106, 119 Stat. 23, 37 (2005)).

The court dismissed twenty-five cases filed by Mr. Huntsman due to the lack of credit counseling. It then issued an order to show cause to determine whether the dismissals resulted from Mr. Huntsman's failure to properly or timely file the cases.[2] The court held hearings on December 6, 2005 and December 12, 2005 on its order to show cause. At these hearings, Mr. Huntsman offered a number of theories as to why the petitions were filed late, and why the old law should nonetheless apply.

Mr. Huntsman's primary defense at the time was that an undetermined systemwide problem with the court's Case Management/Electronic Case Filing ("ECF") system prevented him from timely filing the petitions. Several members of the court's technical and operations staff, however, testified that there were no material gaps.[3]

---

[2]The court issued orders to show cause in each of the twenty-five cases. Since the cases were evenly distributed among the two bankruptcy judges then-active in the Las Vegas division of this District, both judges held common hearings on all matters related to these twenty-five petitions, including the disgorgement proceedings referred to below.

[3]The court offered Mr. Huntsman the opportunity to depose these individuals before the hearings, and to cross examine them at the hearings. This testimony revealed that there had been a seven-minute gap in which the court's ECF system was not functioning, and that this gap occurred sometime between 2:00 a.m. and 3:00 a.m. on Sunday, October 16, 2005. Mr. Huntsman never claimed that this gap affected his efforts.

1    Mr. Huntsman then offered the testimony of his paralegal who had attempted to file

2    the cases before BAPCPA became effective.  She testified as to an inability to log into the

3    court's ECF system.  Because of this, she brought the original petitions to the clerk's office

4    on Monday, October 17, 2005, and attempted to file them over the counter.  As these

5    petitions did not have the manual signature of each client (as they were intended to be filed

6    electronically), the clerk's office did not accept the petitions for filing.  The petitions were

7    ultimately filed around October 21, 2005.

8    After examining the testimony, the court found that the problem lay not with the

9    court's ECF system, but with Mr. Huntsman.  He apparently had not kept his ECF account

10    current, so that it "locked him out" of the system.  Compounding this problem, he had given

11    his client files to a paralegal and then left town without giving the paralegal instructions on

12    how to reach him in an emergency.  As a result, none of the twenty-five petitions were filed

13    before BAPCPA's deadline, and all of the cases were governed by the revised law.

14    The court found that Mr. Huntsman's lack of care caused the dismissal of the twenty-

15    five cases.  It then issued an order to show cause as to why Mr. Huntsman should not be

16    required to disgorge all fees he accepted in those cases pursuant to Section 329.  After a

17    hearing in February of 2006, the court determined that the services rendered by Mr.

18    Huntsman in each of the twenty-five cases had no value.[4]  The court then ordered Mr.

19    Huntsman to disgorge all compensation received, pursuant to Section 329.[5]

20    B.    *The April Fool's Day Press Release*

21    After Mr. Huntsman disgorged fees, the court considered the matter concluded.  Mr.

22    Huntsman did not.  Almost five years later, on October 13, 2010, Mr. Huntsman filed a

23    "Motion to Re-open Case, to Consolidate Case(s) and/or to Reconsider and Motion to

24    Vacate Judgement(s) [*sic*]" (the "Motion to Re-Open").  In the Motion to Re-Open, Mr.

25

26    [4]"[W]e are finding under 329(b) that the value of services rendered in each of these 25 cases was no more than zero."  Transcript of February 2, 2006 Hearing at 10 (Dkt. No. 116).

27    [5]Mr. Huntsman did not appeal either the order dismissing the twenty-five cases or the

28    order to disgorge fees.  Therefore, the factual findings made in 2006 are binding here.

4

1    Huntsman requested that the court vacate its previous orders of dismissal.  Mr. Huntsman

2    also requested that the court enter orders: (1) acknowledging the existence of a computer

3    virus on the court's computer system that affected his ability to timely file the bankruptcy

4    petitions in question in 2005; (2) acknowledging that this computer virus was the cause of his

5    failure to timely file the cases; (3) arranging for the payment of funds to him to compensate

6    him for the resulting harm both to him and to his law practice; and (4) directing that the

7    court issue an apology to him in the *Nevada Lawyer*, the official publication of the State Bar of

8    Nevada.  To say that the relief requested by Mr. Huntsman was extraordinary is an

9    understatement.

10        The Motion to Re-Open was based upon a press release, allegedly released by

11    Moody's Investor Service, and published by Dow Jones Newswires (the "Press Release").[6]

12    The entirety of the purported Press Release is replicated here:

13        **PRESS RELEASE: 2 Hour Change Expected to Be Approved by Bush
        on Bankruptcy Law**

14
        Saturday, April 1, 2006, 4:24 pm
15        (MORE TO FOLLOW) Dow Jones Newswires
        April 1, 2006, 2006 00:20 ET (05:20 GMT)
16        Copyright (c) 2006 Dow Jones & Company, Inc.
        PRESS RELEASE: 2HC-AFJ Virus
17        The following is a press release from Moody's Investors
        *Update on 2 hour changes signed by Bush: Congress was called*
18        *into a special session on March 31, 2006 and amended SB41006*
        *to take into account a computer virus known by Bankruptcy*
19        *Court's through out the nation as the "2HC-AFJ".  President*
        *Bush is expected to sign the Bill later today aboard*
20        *AirForce One.  On the effective date of October 17th, the*
        *Bankruptcy Courts through out the nation except the Courts*
21        *utilizing Pacific Standard Time (including the States of*
        *California and Nevada) permitted filings up to October 18,*
22        *2006 at 12:01 utilzing the Hawaii-Aleutian time zone.*
        *Accordingly, Debtors residing in any state utilizing PST*
23        *time should have had an extra 2 hours to file their*
        *bankruptcy cases.  The new law passed under 2HC permits the*
24        *Chief Bankruptcy Judge of each District in the PST zones to*
        *pick a random day after giving notice to such citizens in*
25

26
        ⁶Mr. Huntsman quoted excerpts of the Press Release in his Motion to Re-Open but
27    did not attach the actual Press Release.  While Mr. Huntsman did have a copy of the Press
      Release available at the first hearing on this matter, he did not file a copy with the court until
28    he responded to the court's show cause order.

*that state that they may file bankruptcy under the old bankruptcy code during a special 2 hour time frame.*

April 1, 2006, 2006 00:20 ET (05:20 GMT)

The Press Release relates a series of events that seem fantastic.[7] The events described in it, however, could be easily verified. There are numerous sources available to check congressional activity, the status of bills, and whether a bill has become law. Mr. Huntsman, however, did not check or research any of these. As a result, his motion did not cite to any provision in the United States Code, to any public law, or to any other accepted authority that would indicate formal enactment of the law discussed.[8]

Before hearing this matter, the court conducted independent legal research to ascertain the status of the law referred to in the Press Release. In less than thirty minutes, the court verified: that no law had ever been introduced, debated, or passed addressing a computer virus known as "2HC-AFJ;" that no legislation was passed during 2006 which addressed any problem of any kind with computers used by any bankruptcy court; and that since the 109th Congress was in session during April 2006, a special session was both unnecessary and impossible. Further, this research revealed that the President of the United States signed no laws on April 1, 2006, let alone while aboard Air Force One. In short, the Press Release appeared to be nothing more than a cruel canard perpetrated on Mr. Huntsman by persons unknown.

C.    *Proceedings Related to Mr. Huntsman's Motion to Re-Open*

The court heard the Motion to Re-Open on November 16, 2010. At that time, the court told Mr. Huntsman of its concerns regarding the authenticity of the Press Release and the law cited. Mr. Huntsman, however, still maintained the propriety of his position,

---

[7]Not to mention nonsensical. If the court's computers had erroneously used the Hawaiian-Aleutian time zone for Nevada filers, those debtors would have had an *extra* two hours to file, as the Hawaiian-Aleutian time zone is west of the court.

[8]Mr. Huntsman made the argument that he did not have the resources to do the necessary research. The court addresses this position in note 13, *infra*.

6

although he did request additional time to investigate the matter.  The court granted Mr. Huntsman's request.

The court also placed Mr. Huntsman on notice that if he was unable to authenticate or otherwise verify the authenticity of the Press Release or further explain his actions, the court would likely initiate proceedings to determine if his conduct violated Rule 9011.  The court explicitly directed Mr. Huntsman to conduct further research to determine whether the purported law had actually been enacted by the United States Government.[9]

Before the continued hearing date, Mr. Huntsman unsuccessfully attempted to withdraw the Motion to Re-Open.[10]  Despite his apparent concession, he nonetheless maintained his righteousness; his declaration supporting the withdrawal stated: "I still believe that some computer glitch prevented the timely filing of the referenced bankruptcy petition(s) . . . .  I believe that former U.S. Trustee attorney, Barry Jenkins, and others were aware of some computer problems at the time in question."[11]

During the continued hearing on January 11, 2011, Mr. Huntsman made an oral motion to withdraw the Motion to Re-Open.  The parties present did not object, and the court granted the oral motion.  However, the court explicitly retained jurisdiction to determine whether Mr. Huntsman's conduct violated Rule 9011.

---

[9]When it instructed Mr. Huntsman to verify whether the law in question had been enacted, the court did not consider this to be an extraordinary request.  Any competent attorney should be able to verify the existence of a federal law.  Apparently, Mr. Huntsman did consider the request extraordinary.  He requested assistance from Harry Reid, United States Senator from Nevada, and Majority Leader of the Senate.  Senator Reid's response is reprinted in Appendix I.

[10]The Office of the United States Trustee had filed an opposition to Mr. Huntsman's Motion to Re-Open, and thus Mr. Hunstman could not unilaterally withdraw his motion. Rule 7041 (made applicable by Rule 9014(c), and incorporating Civil Rule 41).

[11]It is worth noting that Mr. Jenkins, who is now an administrative law judge, took the time to respond to this allegation, stating: "I have no knowledge of the computer problems with the Electronic Court Filing system ("ECF") to which Mr. Rulon J. Huntsman, Esq. makes reference."  Mr. Jenkins further stated: "I never made any representations to Mr. Huntsman or his staff concerning knowledge of ECF computer problems, viruses, or legislation relating thereto."  While Mr. Huntsman's statement regarding Mr. Jenkins' knowledge of matters may have also violated Rule 9011, the court simply considers it as an aggravating factor with respect to the type of sanction imposed.

7

After the hearing, the court ordered Mr. Huntsman to show cause why he had not violated Rule 9011 by filing and later advocating the Motion to Re-Open.  The court's order placed Mr. Huntsman on notice that it was considering each, and possibly all, of the following sanctions:

 (1)  A bar on filing any motion to reconsider or set aside an order of this court unless such motion had been pre-screened and found to have initial merit by this court; or

 (2)  A referral to the State Bar, to allow that body to follow up, should it deem appropriate, on Mr. Huntsman's prior public reprimand with their own sanctions; or

 (3)  A public reprimand in the form of a published opinion explaining the impropriety of Mr. Huntsman's actions under Rule 9011 and further detailing the specific sanctions imposed.

Mr. Huntsman appeared on his own behalf at the March 21, 2011 hearing on the Order to Show Cause.[12]  In response to concerns about the use of the Press Release, Mr. Huntsman stated that he experienced considerable frustration in trying to authenticate the Press Release and that he had endeavored to do so for roughly two years before filing the Motion to Re-Open.  He had made several phone calls to the United States Bankruptcy Court, District of Hawaii, in an effort to verify the facts contained within the Press Release, to no avail.  He had also contacted the Dow Jones News Service, among other news services, and received no support.  He had conducted online research without success.  He also asked an unidentified friend he considered to be a more competent online researcher to verify

---

[12]Mr. Huntsman was represented by another attorney, Mr. Brett J. Marshall, at the January 11 hearing.  A disagreement developed between Mr. Huntsman and Mr. Marshall after the January 11 hearing.  Mr. Marshall alleged that Hunstman had filed a response to the court's order to show cause under Mr. Marshall's name and bar number without Mr. Marshall's permission.  The court allowed Mr. Marshall to withdraw on that basis.

The court made no further findings regarding Mr. Marshall's withdrawal.  This opinion is without prejudice to, and in no way bars, any action that any other disciplinary body may take with respect to these actions.

1  whether the law in question had been passed; this friend could not find any evidence of its

2  existence.  Mr. Huntsman even went so far as to retain the National Legal Research Group,

3  which similarly could not find any evidence of the law.[13]

4          Against this background, Mr. Huntsman admitted at the first order to show cause

5  hearing that he was less than certain that the law existed when he filed the Motion to Re-

6  Open.  He stated that he nonetheless proceeded to file the Motion to Re-Open when he did

7  because he was concerned that an unidentified statute of limitations would soon run, barring

8  him from receiving the relief to which he felt entitled.[14]  After giving Mr. Huntsman an

9

10

───────────────

11      [13]Mr. Huntsman alleged that he was unable to independently verify the accuracy of
   the Press Release or the existence of the law in question because his office does not
12  subscribe to either Westlaw or Lexis.  This alone gives rise to concerns as to the
   reasonableness of Mr. Huntsman's inquiry into the matter, *Gutierrez v. City of Hialeah*, 729
13  F.Supp. 1329, 1332 (S.D. Fla. 1990) (attorney's inquiry was not reasonable within the
   meaning of Civil Rule 11 where the attorney did not consult available "basic legal research
14  tools, such as citators, digests, annotated codes, or computerized searches") (citations
   omitted); *Blake v. Nat'l Casualty Co.*, 607 F.Supp. 189, 191 n.4 (C.D. Cal. 1984) (where
15  attorney did not shepardize relevant case law, did not consult an annotated code or a digest,
   and failed to conduct a computer search, the attorney's inquiry was not reasonable for the
16  purposes of Civil Rule 11).  There are many free legal research tools available to attorneys
   such as Mr. Huntsman.  Not only could he consult one of the many law libraries in Nevada,
17  but as a member of the State Bar of Nevada, Mr. Huntsman has free access to the Fastcase
   legal research database.  *See State Bar Member Benefits: Fastcase*, STATE BAR OF NEVADA,
18  http://www.nvbar.org/content/fastcase (last visited Oct. 12, 2011).  In addition, the
   Thomas website, maintained by the Library of Congress, is freely available to the public.  It is
19  a particularly thorough and accurate source for research concerning federal legislation.  *See
   Thomas*, THE LIBRARY OF CONGRESS, http://thomas.loc.gov (last visited Oct. 12, 2011).
20  Finally, the Legal Information Institute, affiliated with the Cornell University Law School,
   maintains a website which makes available, free of charge, the United States Code, the Code
21  of Federal Regulations, Supreme Court cases dating to 1990, the Uniform Commercial Code
   and many other legal resources too numerous to fully list here.  *See Legal Information Institute*,
22  CORNELL UNIVERSITY LAW SCHOOL, http://www.law.cornell.edu (last visited Oct. 12,
   2011).  The lack of a Westlaw or Lexis subscription, therefore, cannot be said to be an
23  impediment to Mr. Huntsman's ability to confirm whether or not the federal law he claimed
   to exist did, in fact, exist.

24      [14]Mr. Hunstman has never identified the statute of limitations that caused him
   concern.  The Motion to Re-Open appears to rely upon Rule 9024, which incorporates Civil
25  Rule 60(b)(6).  Motions brought under Civil Rule 60(b)(6) are subject to no explicit statute of
   limitations; the rules requires only that such motions "be made within a reasonable
26  time . . . ." Civil Rule 60(c)(1).  Therefore, Mr. Huntsman's argument that he filed the Motion
   to Re-Open to avoid the running of a statute of limitations is without merit, and represents
27  yet another instance where Mr. Huntsman failed to appropriately research his factual and
   legal positions before representing those positions to the court.
28

1  opportunity to present argument and evidence at the hearing, the court took the matter

2  under submission.

3          D.      *Mr. Huntsman's Motion to Redact and Related Proceedings*

4          After the court took the matter under submission, it determined that a reasoned

5  disposition of this matter would require reference to the 2005-06 proceedings involving Mr.

6  Huntsman as well as a record of the hearings leading up to the hearing on the Rule 9011

7  motion.  The court therefore ordered that the 2005-06 and the 2010-11 hearings be

8  transcribed and placed on the court's docket.[15]  The last of these transcripts were filed on

9  May 19, 2011.

10         Mr. Huntsman objected.  On June 8, 2011, he filed a "Request and Motion for

11 Redaction" (the "Motion to Redact").  In the Motion to Redact, Mr. Huntsman sought to

12 redact or seal portions of the 2005-06 hearing transcripts.  The motion did not, however,

13 specify which transcript, or which portions of the transcript, Mr. Huntsman wanted redacted

14 or sealed.  The motion was also devoid of any legal argument or any citation.  Instead, the

15 one-page motion contained a number inflammatory comments directed at the court,

16 including statements that that the contents of the transcript in question were "unforgiving,

17 unfair and unkind" to Mr. Huntsman and that "[p]osting it for public view seemed calculated

18 to harm, injure and embarrass [Mr. Huntsman] unnecessarily."

19         After reviewing the docket, the court determined that the only transcript that could

20 potentially be redacted under Mr. Huntsman's motion was of the hearing held on February 2,

21 2006.  Accordingly, the court treated the Motion to Redact as applying only to the transcript

22 of that hearing.[16]  The transcript contained only the court's unappealed findings of fact and

23

24

---

25 [15]The court ultimately obtained and filed transcriptions of the December 12, 2005,
26 December 19, 2005, February 2, 2006, November 16, 2010, January 11, 2011, and March 21, 2011 hearings.

27 [16]Under the local rules, the time period to file redaction requests for all of the
28 transcripts then filed in the case, except for the transcript of the hearing on February 2, 2006, had elapsed.  *See* Local Rule 9037.

conclusions of law supporting the order requiring Mr. Huntsman to disgorge payments made to him by his clients, as discussed above.[17]

On June 17, 2011, the court denied the Motion to Redact without a hearing.[18]  In the order, the court stated that Mr. Huntsman's request to redact, which did not specify any reason for the request, was insufficient.  Because it appeared that Mr. Huntsman had again filed a motion which violated Rule 9011, the court's order denying the motion also required Mr. Huntsman to appear and show cause why his conduct in filing the Motion to Redact did not represent another, and independent, violation of Rule 9011.  The court further placed Mr. Huntsman on notice that it was considering a significant monetary fine of $10,000 or more as an appropriate deterrent sanction.  Mr. Huntsman received notice of the entry of the order on June 17, 2011 via the court's ECF system.

The court was surprised, then, on June 20, 2011, when Mr. Huntsman filed a declaration in support of the already-denied Motion to Redact.  The declaration was accompanied by a copy of the transcript of the February 2, 2006 hearing, marked with Mr. Huntsman's handwritten "changes."

On June 24, 2011, the court entered an order requiring Mr. Huntsman to explain why he had filed documents in support of a motion that had already been denied, and why the court should not consider these filings improper or unsupported within the meaning of Rule 9011(b).[19]

---

[17]In addition, given that such hearings were joint hearings before the undersigned judge and Judge Linda B. Riegle, *see* note 2 *supra*, these were the jointly adopted findings of both judges.

[18]Mr. Huntsman failed to obtain a hearing date for the Motion to Redact, as required by the local rules, before the court entered its order denying the motion.  *See* Local Rule 9014.

[19]Because the conduct giving rise to the two orders to show cause was related, and thus resolution of one of the orders to show cause seemed inextricably entangled with the other, the court vacated submission of the first order to show cause, and ordered that all conduct identified as potentially sanctionable be heard at the same time.

1   Mr. Huntsman timely filed his response to the court's order to show cause on July 1,

2   2011.  He admitted that he had failed to "support the subject motion with Points and

3   Authorities as required by the applicable rules."  He stated that his purpose in filing the

4   Motion to Redact was not improper within the meaning of Rule 9011(b) because he was

5   merely attempting to protect his own reputation and expunge certain unflattering comments

6   from the transcript of the court's ruling.  Mr. Huntsman did not address the fact that he had

7   filed a declaration, accompanied by a transcript showing his suggested changes, in support of

8   the already denied Motion to Redact.

9   Mr. Huntsman finally addressed this issue on July 6.  He then asserted that it was

10  "factually incorrect" that the court had denied the Motion to Redact prior to the submission

11  of the declaration and accompanying transcripts.  He claimed that the supporting declaration

12  and transcript were "e-filed the very same day, at or near the same time as the Request and

13  Motion to Redact."  He further stated that at the time the declaration and transcript were

14  filed, he had not yet received the court's order denying the Motion to Redact.  Mr. Huntsman

15  also suggested that there was a misunderstanding between him and the court as to when the

16  declaration and transcript were filed.

17  In a "Request for Explanation" filed on July 7, 2011, the court agreed that there was a

18  misunderstanding.  The court asked Mr. Huntsman to address why the chronology available

19  on the docket of these proceedings differed considerably from the one outlined by Mr.

20  Huntsman in his latest pleading.  Using the publicly-available information from the court's

21  docket, the court detailed the dates and times of the relevant filings.  The chart provided to

22  Mr. Huntsman is reproduced here:

23

24  

| Document | Dkt. No. | Date Filed | Time Filed |
|---|---|---|---|
| Request and Motion for Redaction | 119 | June 8, 2011 | 14:41:19 |
| Order Denying Motion for Redaction and Order to Show Cause | 120 | June 17, 2011 | 15:48:00 |

27

28

12

| Declaration of Rulon Jay Huntsman in Support of Request and Motion for Redaction | 123 | June 20, 2011 | 14:58:36 |
|---|---|---|---|
| Redacted Transcript Part #1 | 124 | June 20, 2011 | 15:26:31 |
| Redacted Transcript Part #2 | 125 | June 20, 2011 | 15:26:31 |
| Order Regarding Declaration and Redacted Transcripts Filed by Rulon J. Huntsman | 126 | June 24, 2011 | 11:20:31 |
| Rulon J. Huntsman, Esq.'s Response to Order to Show Cause | 130 | July 1, 2011 | 16:05:17 |
| List of Witnesses and Exhibits | 131 | July 1, 2011 | 16:10:56 |
| Response and Explanation to Order Dated June 24, 2011 Regarding Declaration and Redacted Transcripts E-Filed by Rulon J. Huntsman | 132 | July 6, 2011 | 11:06:02 |

The court also asked Mr. Huntsman to explain his claim that he had not received notice of the court's order denying the Motion to Redact prior to filing the supporting declaration and transcript, since he presumptively had notice of its entry via an email from the court's ECF system as soon as the order was entered on the docket.

On July 9, 2011, Mr. Huntsman filed a response to the court's request for explanation. He apologized for the misunderstanding, stated that he relied on his staff to draft and upload documents, and admitted that the declaration and transcript were not filed contemporaneously with the Motion to Redact. He admitted that "I did not have the Court's Order in hand denying my Request and Motion for Redaction at the time I e-filed my version of the redacted transcript." He then tried to disclaim any blame for the misstatements, averring that "I hope the Court is not trying to make much more out of these oversights than is necessary," and "I hope that the Court is not on a campaign to outmaneuver my office in this instance." He seemed to view the court as being overzealous in its insistence on fidelity to facts: "I feel it borders on abuse and do not believe I can receive a fair hearing on July 14, 2011 before Your Honor." Mr. Huntsman thus requested a

"different, more neutral judge" to preside at the scheduled order to show cause, a request which was denied.[20]

Mr. Huntsman appeared at the July 14, 2011 hearing. The court allocated an entire morning for his response. Mr. Huntsman asked the court to accept his respectful apologies, and asserted that he did not have any malign intention in filing the Motion to Redact, only that he had made mistakes.[21] The court took the matter under submission.

## II.    Analysis of Mr. Huntsman's Violations of Rule 9011

The court will first detail its factual findings with regard to the Press Release and will then analyze Rule 9011's requirements. The court will then turn to a discussion of the facts

---

[20]The court deemed Mr. Huntsman's request an ex-parte motion for recusal. It denied that request in a seven-page opinion filed on July 14, 2011. Mr. Huntsman has not appealed that denial.

[21]Mr. Huntsman made a number of arguments during the hearing on the court's second order to show cause, most of which were relevant to the matter at hand, and all of which the court has taken into consideration in drafting this opinion. The arguments relevant to the resolution of this matter are addressed in this opinion. However, some of Mr. Huntsman's other arguments bear mention and clarification.

At one point during the hearing, Mr. Huntsman argued that his conduct did not violate Rule 9011(b)(4). The court was never concerned that Mr. Huntsman's denials of factual contentions were not warranted on the evidence, or were not reasonably based on a lack of information or belief, and as such, the court's orders to show cause were not based on Rule 9011(b)(4). This was primarily because the court did not think that Mr. Huntsman had denied any factual contentions. Similarly, the court does not consider the Motion to Redact as the denial of a factual contention. The transcript in question memorialized the court's ruling, and a ruling is not a factual contention, it is fact.

Similarly, Mr. Huntsman argued that because he sought to withdraw the Motion to Re-Open, he complied with the twenty-one day safe-harbor provision contained within Rule 9011(c)(1)(A). It is true that Mr. Huntsman attempted to withdraw the Motion to Re-Open, but the safe-harbor provision in Rule 9011 does not apply to these proceedings. It applies only to proceedings initiated by motion, not those initiated upon the court's own initiative, as is here the case. *Compare* Rule 9011(c)(1)(A), *with* Rule 9011(c)(1)(B).

Finally, Mr. Huntsman argued that the court should be mindful of the harm a sanctions opinion can cause to an attorney's reputation. The court agrees with Mr. Huntsman that an attorney's professional reputation is his or her most valuable asset, and that a good reputation, once tarnished, may never recover its former luster. But the court disagrees with Mr. Huntsman that the court has a duty to safeguard an attorney's professional reputation. An attorney's reputation belongs to the attorney, and it is the attorney's to safeguard. If Mr. Huntsman's reputation suffers because of this opinion, it is not the opinion that is the source of the problem; it is Mr. Huntsman's own conduct. The court's opinion operates in much the same way as a photograph; it captures, but does not create, its subject.

14

supporting a finding that Mr. Huntsman's conduct fell well below that which is required by Rule 9011.[22]

### A      The Press Release Was Obviously Fake

The court finds that the Press Release is not genuine, and obviously so. The same is true for the putative federal law to which it refers. After a comprehensive search, the court could not discover the introduction, debate, or enactment of any law addressing any problems with any bankruptcy court computers in 2005 or 2006. The 109th Congress was in session during the relevant time period, and thus calling a special session would have been unnecessary and procedurally impossible. No law has ever been introduced, debated or passed addressing a "2HC-AFJ" computer virus. The President of the United States signed no laws on April 1, 2006. The Press Release is dated April 1, 2006, which, as the court noted in its order to show cause, is April Fool's Day. The Press Release contains spelling and grammatical errors and is not formatted as would be a genuine press release.

Mr. Huntsman conceded in both his response to the court's first order to show cause and during the first hearing that the Press Release was not genuine, despite being convinced of its authenticity during the November 16, 2010 hearing. He did not then, and has not yet, explained how he came into possession of the Press Release. Nor has he further elaborated as to why he thought the Press Release was genuine, despite its myriad deficiencies, and despite his significant, though unsuccessful, efforts to obtain third-party verification as to its authenticity. The court declines to guess at the true origin of the Press Release, although its April 1st date may give some clues. The court simply finds that the document is not a

---

[22]With the exception of the motion for recusal, Mr. Huntsman has not complained of any procedural deficiencies in this matter. The court has reviewed the procedures employed in determining whether Mr. Huntsman violated Rule 9011 and whether to levy sanctions against him for those violations. The court concludes that the procedures employed comply with Rule 9011. The court notified Mr. Huntsman of its concerns in writing through the orders to show cause. The orders placed Mr. Huntsman on notice of the basis for the possible imposition of sanctions and the potential sanctions the court was considering. Mr. Huntsman had an opportunity to respond, which he did. He was given the opportunity to present argument and evidence. The court took the matter under submission to allow time to pass and thereby ensure a thorough and objective review of the record when making its determination.

1   genuine press release from Moody's Investors, published by Dow Jones Newswires.  It was

2   not, and is not, admissible evidence of anything.  Mr. Huntsman should have known this

3   prior to filing the Motion to Re-Open.  He did not.  This failure constitutes one of Mr.

4   Huntsman's violations of Rule 9011, to which the court now turns.

5       *B.    The Requirements of Rule 9011*

6       Rule 9011(b) addresses representations made by all who file or appear in bankruptcy

7   court.  It states:

8           By presenting to the court (whether by signing, filing, submitting, or
            later advocating) a petition, pleading, written motion, or other paper, an
9           attorney or unrepresented party is certifying that to the best of the person's
            knowledge, information, and belief, formed after an inquiry reasonable under
10          the circumstances, —
                                    . . . .
11                  (2) the claims, defenses, and other legal contentions therein are
            warranted by existing law or by a nonfrivolous argument for the
12          extension, modification or reversal of existing law or the establishment
            of new law; [and]
13                  (3) the allegations and other factual contentions have evidentiary
            support or, if specifically so identified, are likely to have evidentiary
14          support after a reasonable opportunity for further investigation or
            discovery . . . .
15
16  Rule 9011(b).  Rule 9011(b) allows a bankruptcy court to independently assess violations of

17  Rule 9011.  *See* Rule 9011(c)(1)(B) ("On its own initiative, the court may enter an order

18  describing the specific conduct that appears to violate subdivision (b) and directing an

19  attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect

    thereto.").

20

21      Under Rule 9011(b)(3), bankruptcy courts have the authority to sanction attorneys

22  who present (sign, file, submit, or later advocate) a pleading that is frivolous.  *Winterton v.*

23  *Humitech of Northern California, LLC (In re Blue Pine, LLC)*, ___ B.R. ___, ___, 2011 WL

24  4482127, at *7 (B.A.P. 9th Cir. Aug. 22, 2011).[23]  According to the Bankruptcy Appellate

25  Panel, "[t]he word 'frivolous,' when used in connection with sanctions denotes a filing that is

26  _____

27      [23]The language of Rule 9011 parallels that of Civil Rule 11. Therefore, courts
    analyzing sanctions under Rule 9011 may appropriately rely on cases interpreting Civil Rule
28  11.  *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994).

1   both baseless—lacks factual foundation—and made without reasonable competent inquiry."

2   *Id.*, at *8 (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).[24]

3   Under this standard, "[a]n attorney has a duty to conduct a reasonable factual investigation as

4   well as to perform adequate legal research that confirms that his position is warranted by

5   existing law . . . ." *In re Blue Pine, LLC*, ___ B.R. at ___, 2011 WL 4482127, at *8 (citing

6   *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). "Thus, a finding that there was

7   no reasonable inquiry into either the facts or the law is tantamount to a finding of

8   frivolousness." *Id.* (citing *Townsend*, 929 F.2d at 1362).

9          The court measures the conduct of attorneys who appear before it "objectively

10  against a reasonableness standard, which consists of a competent attorney admitted to

11  practice before the involved court." *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.*),

12  922 F.2d 1438, 1441 (9th Cir. 1991); *see also G.C. & K.B. Inv., Inc. v. Wilson*, 326 F.3d 1096,

13  1109 (9th Cir. 2003); *In re Blue Pine, LLC*, ___ B.R. ___, ___, 2011 WL 4482127, at *8; *In re*

14  *Sanford*, 403 B.R. 831, 841 (Bankr. D. Nev. 2009). As a consequence, an attorney may act

15  negligently and still violate Rule 9011, as a finding of "[s]ubjective bad faith is not necessary;

16  the attorney must only fail to meet" the objective standard set forth in Rule 9011. *Sanford*,

17  403 B.R. at 841 (citing *Smyth v. City of Oakland (In re Brooks-Hamilton)*, 329 B.R. 270, 283

18  (B.A.P. 9th Cir. 2005), *affirmed in relevant part, reversed in part*, 271 Fed. Appx. 654 (9th Cir.

19  2008) (in turn citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *overruled*

20  *on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990))).

21          *C.     Mr. Huntsman's Violations of Rule 9011*

22          After considering the above legal standards, the court finds that Mr. Huntsman

23  violated paragraphs (2) and (3) of Rule 9011, for the reasons detailed below.

24

25

26          [24]The Seventh Circuit has suggested, but not adopted, another standard of
27  frivolousness: "One standard for frivolousness is risibility—if you start laughing when
    repeating the argument, then it's frivolous." *Mars Steel Corp. v. Continental Bank N.A.*, 880
28  F.2d 928, 934 (7th Cir. 1989) (en banc).

17

1      1.      *Violation of Rule 9011(b)(2)*

2      Paragraph (2) of Rule 9011(b) requires that "the claims, defenses, and other legal

3  contentions" contained within a motion be "warranted by existing law" and "nonfrivolous."

4  Rule 9011(b)(2).  When Mr. Huntsman filed the Motion to Re-Open and the Motion to

5  Redact, and later advocated the positions contained in each, he certified that to the best of

6  his "knowledge, information, and belief, formed after an inquiry reasonable under the

7  circumstances" that the motions complied with Paragraph (2).  Rule 9011(b)(2).  This

8  certification includes the duty "to conduct a reasonable factual investigation as well as to

9  perform adequate legal research that confirms that his position is warranted by existing

10  law . . . ."  *In re  Blue Pine, LLC*, __ B.R. at ___,  2011 WL 4482127, at *8 (citing *Christian,*

11  *Inc.*, 286 F.3d at 1127).  If the attorney does not conduct a reasonable inquiry into either the

12  facts or the law, pleadings thereafter filed are "frivolous" and sanctionable.  *Id.* (citing

13  *Townsend*, 929 F.2d at 1362).

14                    a.      **The Motion to Re-Open**

15      The law which Mr. Huntsman claimed supported the Motion to Re-Open was never

16  enacted.  This fact could have been easily discovered by any competent attorney.  Finding

17  and verifying the existence of a federal law is a staple of first year legal instruction.  If a

18  reasonably competent attorney had been presented with the Press Release, she would have

19  investigated whether the Press Release was genuine.  She would have also conducted legal

20  research to determine whether or not Congress had enacted the law referred to in the Press

21  Release.  If that inquiry had produced no evidence that such a law had ever been passed, the

22  reasonably competent attorney would have concluded that the Press Release was a hoax.

23  From that, she would have concluded that the purported Press Release was something that

24  could not form any basis, let alone the sole basis, for a motion to set aside a court order.

25

26      The violation of Rule 9011(b)(2) here is not that Mr. Huntsman failed to conduct an

27  inquiry.  He clearly conducted one.  He conducted online research; sought the assistance of a

28

18

1    friend; contacted the purported source of the Press Release; contacted the bankruptcy court

2    in Hawaii; and even retained the services of a legal research firm.  He took all of these

3    actions *before* he filed the Motion to Re-Open.  But he did not heed or believe the results of

4    his inquiries.  In the face of evidence which should have convinced him, as it would have

5    convinced the reasonably competent attorney, that the Motion to Re-Open was not

6    warranted by existing law, Mr. Huntsman allowed his desire for vindication to obscure that

7    which should have been clear.  When he filed the Motion to Re-Open, and when he later

8    advocated the positions contained therein, Mr. Huntsman's conduct fell below that which

9    this court objectively expects of a reasonably competent attorney practicing before it.  *See,*

10   *e.g.*, *Brandt v. Schal Assocs., Inc.*, 121 F.R.D. 368, 374 (N.D. Ill. 1988) (plaintiff "cannot rely on

11   the results of extensive post-filing discovery to provide justification for bringing the suit in

12   the first place"); *see also Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 15 (D.D.C.

13   1990) (sanctions imposed, although counsel had "researched the issues, obtained opinions

14   from independent counsel, and evaluated the propriety of filing the action.").  The court thus

15   finds that in so doing, Mr. Huntsman violated Rule 9011(b)(2).

16                                       b.    **The Motion to Redact**

17         The Motion to Redact did not cite any statute, rule, case, or secondary source in

18   support of the requested relief.  Given this lack of support, the court conducted its own

19   research into the matter, considering the Local Bankruptcy Rules, the Federal Rules of

20   Bankruptcy Procedure, and the United States Bankruptcy Code.  The court also considered

21   applicable authority from courts across the United States.  The results of this research were

22   that the Motion to Redact was not warranted by any existing law.

23         Even after filing the Motion to Redact, Mr. Huntsman never explained what authority

24   would support the redaction of a transcript which contains a court's final findings of fact and

25   conclusions of law.  Mr. Huntsman did not address this issue in the motion; he did not

26   address it in his response to the order to show cause, and he had no answer when questioned

27   on this point during the hearing on the matter.  Again, the court concludes that there is no

28

1  legal basis for a request to redact findings of fact and conclusions of law when the movant

2  presents no evidence or law for that request.

3        Unlike with the Motion to Re-Open, Mr. Huntsman's violation here is not that he

4  failed to heed the results of an investigation into the legal basis for the relief he requested, it

5  is that he failed to conduct any investigation before seeking relief. Had he conducted even a

6  cursory investigation, he would have realized that the no authority supported the relief he

7  was requesting, and, as such, that his claim for relief was not warranted by existing law, and

8  therefore frivolous within the meaning of Rule 9011(b). *In re Blue Pine, LLC*, 2011 WL

9  4482127, at *8.[25]

10        2.   *Violation of Rule 9011(b)(3)*

11        Paragraph (3) of Rule 9011(b) requires that "allegations and other factual

12  contentions" in a court filing "have evidentiary support" at the time the filing is made. Rule

13  9011(b)(3). When Mr. Huntsman filed the Motion to Re-Open and the Motion to Redact,

14  and later advocated on behalf the factual allegations contained in each, he was certifying that

15  the motions complied with Paragraph (3) to the best of his "knowledge, information, and

16  belief, formed after an inquiry reasonable under the circumstances . . . ." Rule 9011(b).

17        a.   **The Motion to Re-Open**

18        Rule 9011(b)(3) uses the same reasonably competent attorney standard. Here, such

19  an attorney would have conducted an investigation sufficient to form a belief that the

20  allegations and other factual contentions contained within the Motion to Re-Open were

21  supported by admissible evidence. This would have required an assessment of the Press

22  Release's admissibility into evidence. As the Press Release is not self-authenticating within

23

24

25      [25]Mr. Huntsman later advocated on behalf of the Motion to Redact by filing the

26  supporting declaration and transcript and in other pleadings he filed subsequent to the entry
of the order denying the motion. The court does not consider these subsequent filings

27  independent violations of Rule 9011, even though the argument could be made that they are.
Instead, the court considers these filings aggravating factors which support the imposition of

28  the sanctions detailed below.

1  the meaning of Evidence Rule 902,[26] a reasonably competent attorney would have

2  authenticated the Press Release as specified in Evidence Rule 901, before filing it with the

3  court.

4  But Mr. Huntsman did not even attempt to authenticate the Press Release. Indeed,

5  as mentioned above, Mr. Huntsman did not even provide the Press Release to the court until

6  *after* he had already been allowed to withdraw his Motion to Re-Open. Mr. Huntsman had

7  ample time to research this simple issue, yet, he chose to proceed with unauthenticated and,

8  as it turned out, fake evidence. Without the Press Release in evidence, Mr. Huntsman's

9  factual contentions lacked evidentiary support. And that violated Rule 9011(b)(3).[27]

10  b.  **The Motion to Redact**

11  The Motion to Redact is also lacking sufficient evidentiary support within the

12  meaning of Rule 9011(b)(3). Mr. Huntsman stated in the Motion to Redact that the

13  transcript in question contained the court's personal opinions as to his competence and

14

15  _____

16  [26]Mr. Huntsman contends that he did not need to authenticate the Press Release under Evidence Rule 902, made applicable to this matter by Rule 9017, because the Press Release was self authenticating. This argument is without merit.

17  Mr. Huntsman is correct that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . (6) Printed materials purporting to be newspapers or periodicals." Evidence Rule 902. The court concludes, however, that documents such as the Press Release are not within the scope of Evidence Rule 902. *See Trans-Tec Asia v. M/V Harmony Container*, 435 F.Supp.2d 1015, 1031 n.20 (C.D. Cal. 2005).

18  Even if Mr. Huntsman's argument was correct, it would not apply here. The Press Release was not filed with the court until *after* Mr. Huntsman's Motion to Re-Open was withdrawn. Put another way, an exhibit cannot be self-authenticated if it is never filed with the court. Furthermore, the fact that Mr. Huntsman spent roughly two years endeavoring to authenticate the Press Release shows that even he does not place great faith in this argument. Finally, the Press Release's authenticity is not determinative. Even if the Press Release were authentic, Mr. Huntsman would still have been obligated by Rule 9011 to conduct further investigation into its factual accuracy as to the new law's passage.

24  [27]This court is not alone in determining that the failure to heed the results of an investigation, even without a finding of wrongful intent, is sufficient to justify the imposition of sanctions under Rule 9011. The court agrees that "'a pure heart no longer excuses an empty head.'" *In re Hermosilla*, 450 B.R. 276, 290 (Bankr. D. Mass. 2011) (quoting *Lancelottie v. Fay*, 909 F.2d 15, 19 (1st Cir. 1990)). Some courts have made the point in even clearer language, finding that "[s]tupidity–acting without sufficient forethought–is a legitimate basis for imposing sanctions upon an attorney." *In re Hein*, 341 B.R. 903, 905 (Bankr. N.D. Ind. 2006). Mr. Huntsman, when he decided to file the Motion to Re-Open and the Motion to Redact, failed to exercise appropriate forethought.

21

1    character.  He also stated that the transcript did not go to the "heart of the matter," as the

2    transcript did not address the existence of computer glitches, but instead focused on whether

3    or not Mr. Huntsman should have been ordered to disgorge the fees he received.[28]  These are

4    factual allegations, and, as such, must have evidentiary support to satisfy Rule 9011(b)(3).

5    Mr. Huntsman was specifically instructed in the second order to show cause to address how

6    these factual allegations were supported by admissible evidence.

7         Despite this instruction, Mr. Huntsman did not offer any evidence to support his

8    factual allegation that the transcript contained the court's personal opinions about him.  A

9    cursory review of the transcript shows that it states faithfully the court's oral ruling and

10   contains the court's findings of facts and conclusions of law.  A ruling on a matter is not the

11   court's personal opinion.

12        A reasonably competent attorney would have recognized that he lacked evidentiary or

13   legal support for his position, and would have also recognized that the allegations made

14   mischaracterized the content of the transcript in question.  Unlike the reasonably competent

15   attorney, however, Mr. Huntsman did not arrive at this realization.  Worse, he failed to

16   recognize that the contents of the transcript in question directly contradict the factual

17   allegations Mr. Huntsman made in the motion.  His filing of the Motion to Redact thus

18   violated Rule 9011(b)(3).

19

20

21

22

23

24

25

26        [28]Mr. Huntsman also asserted that the transcript should be redacted because it did not
27   contain his side of the story.  Mr. Huntsman is reminded that this is typical for a judicial
     ruling on a matter.  A attorney who loses his case is not afforded the right of rebuttal in
28   factual findings, especially when he choses not to appeal from the order related to them.

**III.    Sanctions Imposed**

Sanctions under Rule 9011 are deterrent in nature.  Rule 9011(c)(2)("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated"); *Brooks-Hamilton*, 329 B.R. at 283.  The text of Rule 9011 requires that the sanctions imposed by a court "be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Rule 9011(c)(2).  Due to the wide variety of improper conduct, a court imposing sanctions under Rule 9011 "has wide discretion in determining what sanction" should properly be imposed.  *Brooks-Hamilton*, 329 B.R. at 283 (citing *Kowalski-Schmidt v. Forsch* (*In re Giordano*), 212 B.R. 617, 622 (B.A.P. 9th Cir. 1997), *aff'd in part, rev'd in part on other grounds*, 202 F.3d 277 (9th Cir. 1999) (unpublished table decision)).[29]

The court is confronted with conduct that violated Rule 9011 in myriad ways.  The court has taken this pattern of conduct into consideration in crafting an appropriate package of deterrent sanctions.  Before detailing the sanctions, however, the court notes that Mr. Huntsman is not alone in practicing the type of conduct that has led to this opinion, although the facts here are particularly egregious.  Many attorneys file what they assert is the evidentiary support for the factual contentions made in their pleadings, yet take no steps to authenticate the documents they attach.  When motions are not supported by admissible evidence, attorneys responsible for those filings violate paragraph 3 of Rule 9011(b),[30] and

---

[29]The court is cognizant of the American Bar Association Standards for Imposing Lawyer Sanctions (the "ABA Standards"), particularly the section of the ABA Standards that addresses aggravating and mitigating circumstances.  The court has considered these standards to the extent they are applicable.  As discussed above, the imposition of sanctions is within the court's sound discretion.  The court, therefore, declines to "slavishly intone[]" the ABA Standards in situations where they are not fully applicable.  *In re Brooks-Hamilton*, 400 B.R. 238, 255 (B.A.P. 9th Cir. 2009) (Markell, J., concurring).  As recently recognized by the Ninth Circuit Bankruptcy Appellate Panel, the ABA Standards are sometimes a "helpful guide;" however, consideration of the ABA Standards is not mandatory, as this would be "inconsistent with the discretion needed for a bankruptcy court to remedy attorney misconduct . . . ."  *In re Nguyen*, 447 B.R. 268, 277 (B.A.P. 9th Cir. 2011).

[30]Many times the failure to authenticate is not material, as no objection is raised.  But the lawyer acts at his or her own peril when choosing to engage in such conduct.

thereby risk exclusion of potentially important and relevant evidence. *See, e.g., Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir. 2004) (exclusion of bank records for lack of proper authentication and lack of declaration establishing business records exception to hearsay rule). The court hopes that this opinion serves as a reminder to these attorneys and deters them from conducting themselves in a manner similar to that of Mr. Huntsman.

To return to the matter at hand, as sanctions for his conduct in this matter, the court sanctions  Mr. Huntsman as follows:

(1)    Mr. Huntsman is hereby barred from filing any motion to reconsider or set aside an order in the United States Bankruptcy Court, District of Nevada, unless such motion has been pre-screened and found to have initial merit by this court;

(2)    Mr. Huntsman is hereby barred from filing any motion to redact a transcript or strike a document filed in the United States Bankruptcy Court, District of Nevada, unless such motion has been pre-screened and found to have initial merit by this court;

(3)    Mr. Huntsman is hereby publicly reprimanded through this published opinion detailing the impropriety of his actions and his violations under Rule 9011; and

(4)    The court will refer this matter to the State Bar of Nevada, to allow that body to determine whether it wishes to initiate further disciplinary proceedings against Mr. Huntsman, or to conduct any inquiry into his fitness as an attorney.[31]

---

[31]The court here explicitly notes that it has considered Mr. Huntsman's apology for his decision to file the Motion to Redact as a mitigating circumstance. It is for this reason that the court has decided not to impose a monetary fine on Mr. Huntsman. But for this apology, and the sincere manner in which it was offered, the court likely would have levied a significant monetary sanction against Mr. Huntsman.

The court will also delay publication of this opinion and delivery of it to the Nevada State Bar for 14 days after entry to allow Mr. Huntsman to appeal and seek a stay pending appeal. If no stay is obtained, publication and delivery to the State Bar will automatically occur.

1    A reader might reasonably ask why the court has spent so much time on such

2  seemingly minor infractions.  After all, the Press Release was childish, and Mr. Huntsman's

3  quixotic quest to reverse the 2006 sanctions is not common.  Tolerance of these banal

4  transgressions, however, would send the unfortunate message to others that such slipshod

5  practices are acceptable.  That obviously is the wrong message.

6    It may be, as Mr. Huntsman asserts, that he helps many or even most of his clients –

7  but that is beside the point.  While clients cannot reasonably expect legal brilliance with every

8  representation, they are entitled to consistent, accurate, and competent legal advice.  In short,

9  Mr. Huntsman's clients deserve more than an attorney who exhibits competence "most" of

10  the time.  To let Mr. Huntsman and others like him to continue to take money from

11  vulnerable consumers without rendering consistently competent legal advice cannot stand,

12  and Mr. Huntsman's actions in the matter call into question his general competence.  The

13  referral to the Nevada State Bar is designed to assess whether Mr. Huntsman can provide this

14  level of representation to his clients.[32]

15    These sanctions are designed to deter Mr. Huntsman from engaging in conduct that

16  will similarly violate Rule 9011.  It is the hope of the court that the sanctions here imposed

17  on Mr. Huntsman will also serve to deter other attorneys from violating Rule 9011; that is

18  the point of publishing this opinion.  If both Mr. Huntsman and other attorneys know that

19  the penalty for such egregious violations includes the notoriety that accompanies a published

20  opinion, as well as consequences that reach beyond the bankruptcy courthouse in the form

21  of a referral to the State Bar of Nevada, they may exercise greater care in conforming their

22  conduct to the requirements of Rule 9011.

23

24    [32]The court notes that this is not the first time Mr. Huntsman has been sanctioned.
His publicly available bar record indicates he has been twice disciplined by the Nevada State
25  Bar: he was once publicly reprimanded, and on another occasion, his ability to practice was
temporarily suspended.  *See* Bar Record of Rulon J. Huntsman,
26  http://www.nvbar.org/lawyer-detail/11463 (last visited Oct. 12, 2011).  These actions have
resulted in reciprocal sanctions in Utah.  *See* UTAH STATE BAR JOURNAL, September 2008,
27  *reprinted in* Utah Bar Journal, Attorney Discipline, *Reciprocal Discipline*,
http://webster.utahbar.org/barjournal/2008/09/attorney_discipline_1.html (last visited Oct.
28  12, 2011).

**IV.    Conclusion**

As discussed at length above, Mr. Huntsman's conduct in this matter fell well below that which Rule 9011 requires.  This court thus sanctions him for that conduct.  The court does not impose sanctions lightly and finds this to be one of the least rewarding aspects of its duties.  In exercising its discretion, the court has acted with thought and care to draft a set of sanctions that will serve to further the purpose of Rule 9011: to deter repetition this type of sanctionable conduct and to prevent comparable conduct by others similarly situated.

This opinion constitutes findings of facts and conclusions of law under Rule 7052, made applicable here by Rule 9014(c).

The court hereby ORDERS Rulon J. Huntsman SANCTIONED as set forth in detail above.

<u>Appendix I – Letter to Senator Reid</u>

United States Senate
Washington, DC 20510-7012

December 10, 2010

Mr. Rulon J. Huntsman
Attorney at Law
XXX South Eastern Ave
Las Vegas, NV 89104-xxxx

Dear Mr. Huntsman:

     Thank you for contacting me.  I appreciate hearing from you.

     As you may know, the Senate passed the Bankruptcy Abuse Prevention and Consumer Protection Act (S.256) on March 10, 2005 by a vote of 74-25.  I believe that people who have the ability to repay their debts should be required to do so.  I supported S.256 because it put that principle into law and was an improvement over the previous law.

     I noted your inquiry into the validity of "SB41006", which "permits the chief Bankruptcy Judge of each District in the PST zones to pick a random day after giving notice to such citizens in that state they may file bankruptcy under the old bankruptcy code  . . ."  After an exhaustive search, my staff has confirmed that no such legislation was ever passed or introduced in Congress.  Furthermore, my staff confirmed that there is no mention of the alleged computer virus "2HC-AFJ" in the Congressional Record.

     I regret to learn of the difficulties you are currently facing and hope this information is helpful.

     My best wishes to you.

                    Sincerely,

                    HARRY REID
                    United States Senator
                    Nevada

HR:cs

_____

27

Copies sent to:

CM/ECF ELECTRONIC NOTICING
BNC MAILING MATRIX

RULON J. HUNTSMAN on behalf of Attorney RULON HUNTSMAN
nvbklawyers@gmail.com, jhipolito@aol.com;rulon.huntsman@gmail.com

RULON J. HUNTSMAN
1905 S EASTERN AVE
LAS VEGAS, NV 89104

# # #